Wilson-Serrano-Mercado Morning, Counselor.  I would like to focus this morning on their two basic, their two errors included in my brief. The first discussed the issue of whether two domestic abuse cases qualifies as predicates for sentencing enhancement in this case. Of course, this has been the subject of two very recent, or at least one very recent Supreme Court case and the Castleman case this same year. The year before, in the Descamps case, 2013, discussing the categorical approach and following Shepard with regards to the documents that a trial court may use to determine whether there is a crime of violence under either the sentencing guidelines or the Armed Career Act. In this case, what is involved is basically a two-level enhancement that the trial court gave to my client based on determination that two prior domestic cases were violent conduct. There's no dispute that there was no evidence on the record. There was no, at least no Shepard documents discussed. The only evidence or relevant information was the PSR, which stated some information regarding two offenses. The government main focus is on the second event, I assume, because the first, the result of the first was a pretrial diversion program, which was revoked on the second occasion. Counsel, the PSR that contains some specific allegations as to the prior domestic offense, the problem I'm having is that there was no objection. There was no contesting the factual allegations as set forth. So even though it didn't comply with the Shepard requirements, at the time it was presented to the court, no one contested the factual assertions in that document, the PSR? I will state as to that, Your Honor, that it's true that at the sentencing hearing, counsel for Mr. Serrano did not specifically contest, neither did she in the sentencing memorandum. However, in the record, it's clear that counsel for Serrano did object on the local rule 132, which requires trial counsel to first approach the probation officer and present an objection. If the court looks at the addendum filed in the trial docket, it will notice that the probation officer specifically discusses the objection by Mr. Serrano's attorney as to the base and final offense level, and specifically makes reference to the 2.2 level enhancement based on the probation officer recommendation that those two cases, or at least one of them, be used as predicates for the enhancement. So while I agree that there were no further motions, I will submit respectfully that on the local rule, that's sufficient to provide the trial court with information as to a timely objection by the defendant as to a sentencing enhancement. The issue here probably was caused because the trial court directed the government to respond only to the two issues presented by trial counsel in the sentencing memorandum. That suggests that the trial court was not aware of the specific objection that you are pursuing here. It appears that the court was never advised of the position that there had to be this modified categorical approach, which might then have alerted the judge to the need to look at these permissible documents. So I am concerned that the judge was never properly advised by defense counsel of the need to do the very inquiry that you're saying she should have done. It's true that there's no record of the defense counsel specifically asking for either an evaluation under the categorical approach or the modified categorical approach. However, since this court, the cases in Holloway and then in Davis, which are both cited by the government to support that there's that plain error isn't satisfied in this case, I will say that trial courts should be aware and that given the statement in the addendum that basically refers to two prior criminal convictions for crimes of the violence, that's in trial docket 48, it's evident that the court has to do after Holloway at least a categorical approach review and if necessary a divisible statute, which I submit that it is, then do a modified categorical approach. And even though ‑‑ yeah. Why wouldn't it just be reasonable for the district court to assume that in the absence of an objection the defendant was conceding that his prior conviction was a crime of violence without having to go through independent analysis without it being called his attention? Well, I see that that's one point of seeing it in the sense of silence by trial counsel is acceptance. The fact is that the PSR doesn't make this statement that those two events or which of those events is a crime of violence is assumed because there's nothing on the record to state which were the relevant predicates for the enhancement. I thought ‑‑ tell me if this makes sense. Suppose you don't object in a PSR to a commission of an offense and the offense is just plainly not a crime of violence. Just a possession of marijuana, let's say. But the PSR characterizes it as a crime of violence and you don't object. Your position is to do an enhancement on that basis would be plain error, right? It doesn't matter that you conceded it was a crime of violence because on its face that law is just not a crime of violence and it would be plain error to enhance this. That's your position, right? That's my fallback position. As your fallback position, here's the difficulty that I have. If I accepted that much, the underlying predicate Puerto Rican law, are we allowed to look at the Puerto Rican, the untranslated Puerto Rican cases, interpreting that law as to whether it is or is not incorporating simple assault? If we can't, if we did look at them, would it be so crystal clear that it was not a crime of violence? And if all of that is unclear, then on plain error of view, how can you win? First, yes, you can, and it's done in civil and criminal cases by this honorable court. You may even ask for a certification to the Puerto Rico Supreme Court. But that's unnecessary. In the record, in this case, the government submitted in their addendum or appendix the translated statutes. And if you look at them, it's obvious from its redaction, which is kind of similar to other... You mean the text of the statute? Exactly. Yeah, but the problem is that that statute has then been interpreted by the Puerto Rican Supreme Court. But let me say this. That statute includes, for example, psychological violence, which as precedence by the Supreme Court, even by this honorable court, stated it's not enough. But furthermore, Puerto Rico Supreme Court precedent, which we can... He did not object to the PSR. That's true. So it would at least be reasonable for us to assume that he was conceding that he was under the physical part of that statute, since he doesn't say otherwise. Then you say as a fallback position, which I understand doesn't matter if that statute inherently is not a crime of violence. But how do we know that unless we go through and understand how it's been interpreted? That's not clear. And I have citations, and the government also has citations, where the Supreme Court of Puerto Rico has said that that statute includes mere touching, which is the same type of language that has been discussed in other states, domestic violence statutes, as being not sufficient. That's in those two Puerto Rican cases? In one of the cases cited in my brief, it is. And I submit it's clear that... Is it fair reading of the Puerto Rico statute that even damage to property of someone, the property of someone who is in a domestic relationship with the perpetrator, that even damage to property is covered by that statute? Is that correct? That's correct. And threat to property. The problem, I think it's clear that it covers more than just what we would consider crimes of violence. Mere touching, property. The problem I'm having is that the PSR sets out some specific factual allegations as to what happened during the prior incidents which led to the conviction, which clearly set forth acts of physical violence against another person. And that wasn't objected to. I'm just trying to figure out how we get around that. And the only way around that, if that's the conclusion where the court is on the plain error review. And the error, it's clear and it's plain. If you go to Carter, which is a recent, this court's recent case... What's plain, just so I understand your argument, what's plain, you say, is take those facts as true. The relevant prong of the Puerto Rican statute that would cover those facts. So the physical violence part of the statute is now triggered. If we took that much as true, your contention is even that provision of the Puerto Rican law might not count as a crime of violence because it may pick up nothing more than simple assault. And under the modified categorical approach, it doesn't matter what he actually did. It matters what that prong, which covers what he actually did, covers. Is that the argument? Exactly. And besides that... We have to decide, though, that it's plain and obvious that that prong of the Puerto Rican statute, which is triggered by his underlying conduct, covers simple assault in order for you to win. Exactly. Other conduct. And I will submit, briefly, just to conclude, you obviously have to also view prejudice. And here, there's few information on the record, but I will submit this to conclude. Under Puerto Rico, the records, basically, that's the complaint. The sentence, Puerto Rico criminal law sentence, doesn't include any facts. So that creates another issue, because the Supreme Court stated that what's relevant to that determination as to error is what the defendant admitted as the underlying predicate offense, not really what was charged. And that's part of the issue of plain error here that will, if reviewed, I will submit that the evidence will have shown that the crimes won't qualify. And the defendant obviously received an enhanced sentencing level. Did you reserve a minute for rebuttal? No, I said... I'd like to ask you one final question. In your reply brief, although you resist the notion that plain error applies, you explain why the plain error standard is met, with one exception. You don't address the fourth prong of plain error, which we would have to do if we were going to address this as plain error. You seem to conflate the fact that there would be prejudice here, and it's hard to resist the conclusion there would be prejudice if the guideline was wrong, and hence more time was being served. But there is that fourth prong about affecting the reputation, the integrity of the proceedings. You don't address that at all. Are you saying that it follows inescapably, that if there was prejudice in the sense that more time would be served, that the fourth prong is also satisfied? No. I would submit as to that fourth prong, two things. First, this Court has also used a miscarriage of justice, like some way of trying to summarize what's the fourth prong. In this case, it's not only the enhancement or the additional sentence that the defendant incurred, but the effect that this has on plea agreements. This defendant bargained for a much lower sentencing level, and it not only affects this bargaining, but as the Supreme Court in Castleman stated, this type of situation where you have cases that are played out at the state level and then may increase or may not increase an offense at the federal level afterwards, there's some effect in the plea agreement if courts are allowed to go into facts that are not really admissible and enhance sentences to people that maybe even bargained for a specific crime, looking forward, not to having to face and enhance, and this may be the case. It's a general concern the Supreme Court discusses in the Castleman case. I think it's respect for plea agreements, not only in this case, but given the fact that the categorical approach focuses on the prior conduct, on the prior conduct court record, not the police record, the court record, there's some need to protect the public interest in that those pleas and the fact that those pleas have in subsequent cases is respected. I would submit that that satisfies the fourth prong. Good morning to the panel and to the visiting judges. May it please the court, my name is Francisco Mezosa Martinez, and I represent the United States. I'd first like to start by addressing the standard review issue, whether it's plainer review as the government contends or de novo review as posited by the defense. The defense says that they ably objected to the characterization of his prior offense of domestic violence as a felony conviction of a crime of violence, because it was raised with the probation officer and that such objection was in the addendum. However, when looking at the addendum, the actual objection was to the total base offense level, because it was different from that which had been stipulated under the plea agreement. To that, the probation officer responded that the increase in the total offense level was due to the prior felony convictions for crimes of violence. After that, the defense did not raise or address the issue to the point that in their memorandum in aid of sentencing, they specifically addressed the criminal history category, because it took into account his previous conviction for attempted escape. No mention was made as to the reliance on his previous conviction for domestic violence, nor was it raised during his sentencing. Therefore, I think the record makes it plainly obvious that the issue was not raised. Therefore, we are under plainer review. Following that, for a domestic violence conviction to be considered a felony conviction for a crime of violence, there are two prongs to that definition of crime of violence. One is whether he uses, attempted use, or threatens to use physical force to a level that causes physical harm. Or in the alternative, conduct that creates a potential risk for physical harm to occur to another. The government's position is that under whatever element of the domestic violence conviction to be considered a felony conviction, there is no domestic violence statute this is looked upon, it does create a serious potential for harm to another. As the Supreme Court in Cassimo stated, domestic violence is a term of art, which includes, yes, conduct that is not necessarily violent in the non-domestic setting. However, they specifically say that in the domestic setting, the accumulative effect of these minor acts such as, I think the example they use is grabbing someone by the arm to the extent that it causes a bruise. It does become a violent act because it subjects one intimate partner to the control of another. So you're saying that it is categorical, an offense under this is categorical? Yes. That's the government's position? I'm sorry? So the government's position is that any conviction under this section is categorically a crime of violence? Crime of violence, yes. Felony conviction, it would have to be established that there was an aggravating factor, as was in this case. Since in the PSR it's plainly obvious that he was sentenced to 18 months term of imprisonment under the second conviction, which... Could you just, what part, maybe it would be helpful to me, what part of the Puerto Rican statute do you think is the portion of the statute that we would need to evaluate to determine that that statute counts as a crime of violence? For purposes of the sentencing enhancement? Yes. Whether or not there were any aggravating factors? No, no, the portion of the Puerto Rican law. There's many prongs to it, right? Yes. Some are clearly not, if he was convicted for something under that part of it, you'd say no crime of violence. Just emotional harm or something like that, right? I think the government's position would be that even that would be a crime of violence, because in the context of a domestic violence conviction, there is, we have to see it as an accumulative acts that have occurred throughout time, and that makes it, that turns it more of a violent act. So what part of the conviction do I need to look at in addition to the statute then? In this case, there's the statute, and the statute has these various prongs, right? And if I just look at the prongs, some of them just colloquially don't look like they would be a crime of violence if you were convicted of that part of it. Some of them talk about physical force or threat of physical force. That seems like it could be. Then, I don't know if it's the Johnson case, the case that suggests if it's just simple assault, that means as a categorical matter, that statute does not count as a crime of violence. Because you were convicted under it, and the statute itself picks up too much, okay? So I guess I'm trying to figure out the prong of the Puerto Rican law that we're supposed to look at. I can't tell on its face whether it picks up too much or too little. You say there's an aggravating factor that means I don't have to worry about that. But I don't quite get that. Well, the statute in and of itself sets a fixed term of one year. Okay. Which obviously does not apply under sentencing guidelines, because it has to exceed one year. However, it also states that if there are any aggravating factors that are proven, then the sentence can be enhanced to up to 18 years. Okay. Which then would bring it under the sentencing guidelines. And then what do I look at to see what's proven as the aggravating factor? In this particular case, the fact that there was a prior conviction of domestic violence, which was the first one for which he was sentenced to, I believe, 18 years. And nine months imprisonment. Counsel, I'm also struggling a bit to understand your rationale. You seem to be saying that burglary is treated as a crime of violence, because any time there is an unlawful entry, it creates the risk of a violent confrontation. So you seem to be saying that, like a burglary, the domestic situation is so charged that there is a risk of a violent confrontation. That if there is psychological intimidation, or if there is damage to the property of the partner in the domestic relationship, that those kinds of events create a risk of violence, which is consistent with the federal definition. Is that sort of your basic notion of why the Puerto Rico State Department of Justice decided to do this? Because the statute meets the categorical requirements of the federal law? Yes, Your Honor, that would be correct. Do you have any case law? I'm sorry? Do you have any case law which would suggest that because it's categorized as a domestic offense, that like burglary, it automatically translates into a domestic offense? I believe in Castlemont, the Supreme Court touched upon it a bit in saying that in the context of a domestic violence, these minor acts that may not be, in a non-domestic setting, violent, they can be seen as violent in the domestic setting, because of their community. So one way we could say on this rationale is, at least with respect to him falling under the physical force, rather than the psychological abuse, and because he didn't object to the PSR, we could say he just conceives that it's under physical force, given the facts. That you would say, because under this statute, it's not physical force in the abstract, but it's physical force of a partner. A partner or former partner. That itself, under Castlemont, makes it a crime of violence. Even if it would be otherwise simple battery. Yes? No? Under Castlemont, I don't believe Castlemont would specifically say that, but I wouldn't preclude that either. Would we have to make a new interpretation of crime of violence in order to conclude? I don't believe so, Your Honor. Could we just say it's unclear enough, that therefore, under plain error, it's not an obvious error? Yes, I believe so. Much like in United States v. Rios-Hernandez, where the First Circuit had a very similar situation, where a prior domestic violence conviction was not objected to in the PSR, and was categorized as a crime of violence. And this Court stated that it was not a clear and obvious error for the Court to rely on the PSR. Was the statute he was convicted under over-broadened the sense that that statute, if subjected to categorical analysis, might not have constituted a crime of violence? I do not believe so, Your Honor. I don't believe it's that clear. It would be a pretty different case if it doesn't have that feature. I'm sorry, I didn't catch that last part. Well, I think the problem is that he consented to conduct under a statute, but it's not clear that the statute, even as the prong he may have consented his conduct falls under, constitutes a crime of violence under the categorical analysis. That's the problem. What's the government's reason for thinking there is no problem? As I was previously saying, in the domestic violence context, these minor acts, which may not seem violent, do become violent because of their accumulative effect. They subject one interpreter to the will of another, and it gets to a point where even a light touching or a light grabbing of the arm with a little bit of force is not a crime. But a light touching or a light grabbing of the arm with a little bit of force can automatically trigger a response from that person who has just had enough at that moment, which can lead to a confrontation or altercation. That's why I want to ask you very quickly about the obliteration of the serial number, which we have not talked about. But I ask it because I do have some concerns about the application of that enhancement. This is a situation where there remained on the gun a serial number, and that serial number is a crime. That would have allowed whatever tracking might have to be done to figure out where the gun came from, that kind of thing. And that seems to be the underlying concern, that obliteration of serial numbers precludes that kind of follow-up. Yeah, perhaps literally the guideline applies here, but in terms of the rationale for punishing obliteration, the enhancement here really seems to make no sense. How do you respond to that concern? Well, I think we have to look at the broader government interests that are trying to be protected here in terms of being able to trace guns. But that can be done here. There's no question that can be done here. In this particular case, yes, but the fact that it was obliterated even in one component, we have to realize that these guns are made of various components that can be assembled, reassembled, and interchanged with others that might have a different serial number. So that's the... Well, the court makes some observation that the portion of the gun on which the one of the serial numbers is found, it could have been, or the serial number remains intact, it could have been removed. Is there any evidence to support that? I'm sorry, which one was removed? The court makes that observation. Opposing counsel says there's no evidence in the record to support the court's assumption that this particular portion of the gun was somehow removable. Is that just common knowledge? Is there any evidence in the record to support that observation by the court? On the record that I do not... Off the top of my head, I don't recall... The slider of a Glock can be removed. I think that's what the common knowledge is. The slider of a Glock can be removed. Can I just on that? I thought the government was making an argument that there was a concern with the mere possession,  with a partially obliterated serial number, I assume because there was some suggestion that you were then trading potentially in guns of a problematic character, because guns with a partially obliterated serial number suggest that it might be part of a legal trade or something. Is that part of the government's rationale for this or not? Yes, Your Honor. Thank you, Counselor.